UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BENJAMIN ESPINOSA,<br><br>           Plaintiff,<br><br>v.<br><br>WILLIAM GITTERE, *et al.*,<br><br>           Defendants. | Case No. 3:21-CV-00205-ART-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 62] |

        This case involves a civil rights action filed by Plaintiff Benjamin Espinosa ("Espinosa") against Defendants Gloria Carpenter ("Carpenter"), David Drummond ("Drummond"), William Gittere ("Gittere"), Dennis Homan ("Homan"), Dawn Jones ("Jones"), William Reubart ("Reubart"), Stark, Jon Verde ("Verde"), and Harold Wickham ("Wickham") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 62, 67[2].) Espinosa responded, (ECF Nos. 72, 74, 75[3]), and Defendants replied. (ECF No. 82.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 62), be granted.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

        On May 4, 2021, Espinosa filed a civil rights complaint under 42 U.S.C. § 1983 and an application to proceed in forma pauperis for events which occurred while incarcerated at Ely State Prison ("ESP"). (ECF Nos. 1, 1-1.) On December 22, 2012, Espinosa filed a motion for leave to file a first amended complaint ("FAC"). (ECF No. 14.) The Court granted the motion and screened the FAC pursuant to 28 U.S.C. § 1915A(a).

---

[1]    This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    ECF No. 67 is an erratum to the motion for summary judgment.

[3]    ECF Nos. 74 and 75 are appendixes to Espinosa's response.

(ECF No. 22.) The Court allowed Espinosa to proceed on the following claims: (1) First Amendment retaliation against Gittere ("Claim 1"); (2) Eighth Amendment deliberate indifference to the need for protection against Gittere, Reubart, Wickham, Drummond, Verde, and Homan ("Claim 2"); and (3) Eighth Amendment deliberate indifference to serious medical needs against Jones, Stark, and Carpenter ("Claim 3"). (*Id.*) All claims arise from allegations that general population ("GP") inmates were poisoning food for protective custody ("PC") inmates. (*Id.*) The Court will now discuss the undisputed evidence in fact as presented by the parties unless otherwise noted by the Court.

### 1. Claim 1

In Claim 1, Espinosa alleges that in response to a kite from Espinosa about finding foreign items in his food, Gittere placed Espinosa in the infirmary for thirteen days. (ECF No. 23 at 8.) On June 8, 2020, Espinosa was cell extracted and relocated to the infirmary where he was held in custody. (ECF No. 74 at 4.) The officers moving Espinosa told him they were ordered to do so by Gittere. (*Id.* at 5.) On June 6, 2020, Espinosa sent a kite to Gittere complaining generally of finding "foul things" in his food and specifically about finding a wire from a "scotch bright" or wire sponge in his food. (ECF No. 75 at 11.) The kite was received by the Warden's office on June 8, 2020. (*Id.*) On June 10, 2020, Espinosa sent another kite to Gittere which claim that Gittere "uprooted [Espinosa] from his cell" and asks to be returned, to which the response was "[n]o, I'm concerned for your health." (*Id.* at 14.) The responses to both grievances are unsigned by Gittere but bear the stamp showing when the kite was received by the Warden's office. (*Id.* at 11, 14.)

Gittere provides a sworn statement that he did not order CERT to extract Espinosa from his cell and place him in the infirmary on custody status on June 8, 2020. (ECF No. 62-1 at 3.) Gittere also acknowledges receiving complaints of tampered food but claims he did not take any retaliatory actions against Espinosa for his complaints or for any other reason. (*Id.*)

///
///

### 2. Claim 2

In Claim 2, Espinosa alleges Espinosa alleges the food trays provided to Protective Custody ("PC") inmates that were prepared by General Population ("GP") inmates were poisoned with feces on one occasion and an undetectable cleaning detergent on other occasions. (ECF No. 23 at 9.) Espinosa alleges Defendants Gittere, Reubart, Wickham, Drummond, Verde, and Homan knew of the poisoned food but failed to act other than to randomly switch the food carts, although Espinosa alerted them that the switching was not effective and therefore continued to allow the poisoning of food. (*Id*. at 6.)

The evidence submitted establishes the following: On September 18, 2019, inmates discovered feces in their food. (ECF No. 74 at 13, 16, 21, 23.) As a result, inmates experienced health problems, including "bubble guts," vomiting, acid reflux, severe heartburn, cramping, and numbness of the tongue. (*Id*. at 10, 13, 16-17.) Inmates filed grievances complaining about the poisoned food, (*Id.* at 21, 31, 36-38, 40, 42-44), and sent kites to Gittere and other staff. (ECF No. 75 at 10-23.)

Gittere and medical staff went to investigate the allegations of feces in the food on the day it occurred. (ECF No. 74 at 5, 13, 16.) Defendants "investigated, instituted a program of random tray-swapping, tasted the food, supervised inmates, issued Operational Procedures for the Culinary, and responded to grievances." (ECF No. 82 at 4, ECF No. 62-1, ECF No. 62-6.) Inmates who worked as porters, including Espinosa, knew the switching was not working because they could see that the food trays were marked with cell numbers before being switched. (ECF No. 74 at 3-6, 10.) Defendants were informed that the cart switching technique was ineffective. (ECF No. 74 at 5, 10.)

### 3. Claim 3

In Claim 3, Espinosa alleges he experienced health issues from the poisoning of the food, but Jones, Stark, and Carpenter refused to test for the bacterium H. Pylori for eight months, after which Espinosa needed treatment for the bacterium. (ECF No. 23 at 7-8.) H. Pylori can be transmitted by sharing food and drink with others. (ECF No. 62-7 at 3.) Many inmates, including Espinosa, were treated for H. Pylori. (ECF No. 74 at 5, 13-

14, 16.)

### 4. Defendants' Motion for Summary Judgment

On June 5, 2023, Defendants filed a motion for summary judgment arguing summary judgment should be granted because: (1) Defendants are entitled to qualified immunity on Claim 2; (2) Espinosa failed to exhaust his administrative remedies as to Claims 1 and 3; and (3) in the alternative, all three claims fail based on the substance of the claims. (ECF No. 62.)

On July 18, 2023, Espinosa responded to Defendants motion for summary judgment. (ECF No. 72.) Espinosa also provided two appendixes to his response containing exhibits and declarations in support of his motion. (ECF Nos. 74, 75.) Espinosa argues he attempted to grieve Claim 1 but his grievance was never filed. (ECF No. 72 at 21-23, ECF No. 74 at 3.) Espinosa argues that Defendants misstated the timeline for Claim 1, as the retaliation in question occurred in 2020, not 2021. (ECF No. 72 at 20.) As to Claim 2, Espinosa argues that Defendants knew of the issues with GP inmates wanting to harm PC inmates and that the techniques for preventing such harm were flawed. (ECF No. 72 at 24.) Critically, Espinosa "voluntarily dismiss[es] Defendants Carpenter, Stark, and Jones from [the] instant suit" because he could not locate grievances about Claim 3. (*Id.* at 32.)

Defendants replied on August 23, 2023. (ECF No. 82.) As to the issue of retaliation, Defendants argue that Espinosa has not shown the complete absence of correctional goals because moving him into the infirmary under custody protected him from the "poisoning" of which he complained. (*Id*. at 4.) For Claim 2, Defendants reiterate that they investigated Espinosa's claims of food poisoning and implemented multiple solutions to attempt to resolve the issue. (*Id.*) Defendants also consent to the dismissal of Carpenter, Stark, and Jones. (*Id.*)

///
///
///

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d

at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and

meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.   DISCUSSION

#### A.   Retaliation (Claim 1)[4]

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections

---

[4] Although Defendants' motion for summary judgment begins with a discussion of qualified immunity and exhaustion, the Court will first evaluate the merits of Espinosa's claims.

system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Within the prison context, a viable retaliation claim has five elements: (1) a state actor took some adverse action against the inmate, (2) because of, (3) the inmate's protected conduct, and that the action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. The adverse action must be such that it "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quoting *Rhodes*, 408 F.3d at 568).

To prevail against Defendants' motion for summary judgment, Plaintiff must demonstrate a triable issue of material fact on each element of his retaliation claim. *Brodheim*, 584 F.3d at 1269 n.3. An inmate must submit evidence, either direct or circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995). "[A] plaintiff must show that his protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.'" *Brodheim*, 584 F.3d at 1271 (quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The plaintiff "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent.'" *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

To raise a triable issue as to motive, plaintiff must offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted). Circumstantial motive evidence may include: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse ... action were false and pretextual." *Id.* (internal citation and quotation marks omitted). However, "mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Here, Espinosa provides a declaration which states that Gittere retaliated against Espinosa for challenging Gittere's insufficient protocols by ordering a Cell Extraction Team ("CERT") to cell extract Espinosa and place him in the infirmary under custody. (ECF No. 74 at 4.) Espinosa alleges he was moved to the infirmary on June 8, 2020, after Espinosa sent Gittere multiple kites and met in person several times regarding the poisoning of food. (*Id.*) Espinosa alleges the CERT officers who extracted him "said that such orders were made by [] Gittere." (*Id.* at 5.)[5] By contrast, Gittere provides a sworn statement that he never ordered CERT to extract Espinosa from his cell and place him in the infirmary on custody status. (ECF No. 62-1 at 3.) Gittere also acknowledges receiving complaints of tampered food but claims he did not take any retaliatory actions against Espinosa for his complaints or for any other reason. (*Id.*)

Defendants point to the disparity of time between the alleged food poisoning and the alleged retaliation.[6] Defendants argue the time period between the "feces event" and the placement of Espinosa in the infirmary is so long as to negate a finding of circumstantial motive due to proximity in time. (ECF No. 62 at 11-12.) Espinosa declares that the "feces event occurred on Sept. 18, 2019." However, Espinosa argues that the retaliation occurred in response to a kite sent on June 6, 2020, about finding a piece of metal sponge in his meal while washing his food to prevent future poisoning. (ECF No. 72 at 19.) Espinosa alleges the retaliation occurred on June 8, 2020. (ECF No. 74 at 4.) Therefore, the time between the retaliatory act and the motive for retaliation is sufficient to show a causal connection. *McCollum*, 647 F.3d at 882.

However, Even assuming that Gittere did order the cell extraction for purposes of deciding this motion, another essential element of a First Amendment retaliation claim

---

[5]  On summary judgment, the Court may only consider admissible evidence. *Jones*, 393 F.3d at 923. Espinosa's claim that he was "told" by CERT officers that Gittere ordered the cell extraction is a hearsay statement and is therefore inadmissible. *See* Fed. R. Evid. 802. Therefore, this statement cannot be considered in ruling on the motion for summary judgment.

[6]  Defendants write that the alleged retaliation occurred on June 8, 2021, rather than the correct date of June 8, 2020. (ECF No. 62 at 12.)

that a plaintiff must show is that the alleged retaliatory action did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. The prisoner plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806.

Here, Defendants argue that, although Gittere denies ordering the cell extraction and placement in the infirmary, there is a legitimate correctional goal in moving an inmate who complains of poisoned food into the infirmary. (ECF No. 62 at 12, ECF No. 82 at 4.) Espinosa alleges that Gittere retaliated against Espinosa for complaining about Gittere's inability to protect Espinosa as required, which Defendants point out was accomplished by moving Espinosa to the infirmary where he was protected. (ECF No. 72 at 16, ECF No. 82 at 4.) Defendants state that "[e]ven though Espinosa suggests he was perfectly healthy, Gittere may have been concerned about Espinosa's physical and mental health." (ECF No. 62 at 12.) Defendants point to a kite from Espinosa where he states, "the Warden said he's concerned with my health." (ECF No. 62-3 at 4.) In his complaint, Espinosa details numerous occasions of alleged poisonings and related health issues of which he alerted prison officials. (*See* ECF No. 23.) Espinosa also grieved these issues and sent multiple kites about health issues he was having from the alleged poisoning. (*See* ECF Nos. 74, 75.)

Although Espinosa repeatedly alleges Gittere placed him in the infirmary out of retaliation, the combination of Espinosa's complaints of health issues from poisoned food with his placement in the infirmary and statements that the Warden is concerned about his health is sufficient to show the presence of a legitimate correctional goal. *Pratt*, 65 F.3d at 806. By doing so, Defendants have shown there is an absence of evidence to support an essential element of Espinosa's claim. *See Pakootas*, 905 F.3d at 593-94;

*Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. Thus, the Court recommends that Defendants be granted summary judgment as to Claim 1.[7] *Matsushita,* 475 U.S. at 586.

### B. Deliberate Indifference to Need for Protection (Claim 2)

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. MO Chapman*, 452 U.S. 337, 347 (1981). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). To establish a violation of these duties, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

When an inmate claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty.*

---

[7] Defendants argue Espinosa failed to exhaust his administrative grievances as to Claim 1. However, in a sworn declaration, Espinosa claims he wrote an informal grievance regarding the retaliation by Gittere which was picked up but never filed properly. (ECF No. 72 at 21-23, ECF No. 74 at 4.) This claim made in a sworn declaration "show[s] there is something in [Espinosa's] particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). Therefore, the Court may not grant summary judgment for failure to exhaust administrative remedies as to Claim 1.

*of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of *and disregarded* the risk to the inmate's safety. *Farmer*, 511 U.S. at 837 (emphasis added). "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

First, Defendants argue that Espinosa does not provide evidence to show the occurrence of a constitutional violation. (ECF No. 82 at 2-3.) Defendants characterize the declarations from other inmates Espinosa provided as "parrot[ing] Espinosa's claims, but claim, without corroboration, that food was contaminated. None of them creates an issue of fact." (*Id.* at 3.)

The Ninth Circuit held that prisoner litigants proceeding pro se must be informed of the requirements of Fed. R. Civ. P. 56 and the consequences for failing to meet those requirements prior to granting summary judgment. *See Rand v. Rowland*, 154 F.3d 952, 955–56 (9th Cir. 1998) (en banc); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988). To comply with those requirements, the Court provides the following guidance in the form of a minute order filed on the docket:

> When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in the form of admissible evidence (such as affidavits, declarations, depositions, answers to interrogatories, or properly authenticated documents as provided in Rule 56(e)), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.

(ECF No. 63 at 2.)

Here, Espinosa does exactly as instructed and provides declarations from other inmates who complain of the same circumstances in the form of sworn declarations. (ECF No. 74.) Some declarations specifically mention the presence of feces or detergent in meals for the PC inmates. (ECF No. 74 at 13, 16, 21, 23.) The declarations also include descriptions of the symptoms of eating the contaminated food. (*Id.* at 10, 14, 17.)

Regardless of any declaration provided from other individuals, when a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). All of those requirements are met here by the sworn declaration of Espinosa himself. (ECF No. 74 at 3-6.)

The Court rejects the notion that the declarations provided by Espinosa would be rejected at the summary judgment stage. Pursuant to Federal Rules of Evidence 602, a witness may only testify based on personal knowledge of a matter. In a summary judgment setting where the Court determines whether reasonable minds could differ when interpreting the record and <u>does not</u> weigh the evidence or determine its truth, the Court may not discount sworn statements from individuals with personal knowledge of the matter merely because they resemble statements provided by others. *Velazquez*, 793 F.3d at 1018. Accordingly, the Court will consider these declarations in determining whether this claim may survive summary judgment.

Turning to the objective prong, "it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms." *Lemire*, 726 F.3d at 1075 (citation omitted). Here, Espinosa alleges he was exposed to feces and cleaning detergent in his food, which is a substantial risk of serious harm. *Bradford*, No. 117CV01601SKOPC, 2018 WL 1014554, at *3 ("Intentionally distributing food known to

have been contaminated with fecal matter qualifies as disregarding a substantial risk of serious harm to the inmates who received the food.")

As to the subjective prong, an official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of <u>*and disregards*</u> an excessive risk to inmate health or safety. *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015) (quotation marks and citation omitted) (emphasis added). Here, Defendants argue that they were not deliberately indifferent because they did not "disregard" the risk of harm in this case – which is a necessary element that Espinosa must establish to survive summary judgment. Rather, Defendants argue that they "investigated, instituted a program of random tray-swapping, tasted the food, supervised inmates, issued Operational Procedures for the Culinary, and responded to grievances." (ECF No. 82 at 4.) Defendants argue they are "entitled to summary judgment because the evidence demonstrates there is no dispute that they confronted Espinosa's allegations and did not simply ignore them." (ECF No. 62 at 15.) Defendants provide sworn statements that reports of GP inmates tampering with PC inmate's food were investigated. (ECF No. 62-1, 62-4, 62-7.) Gittere attests that he had complaints of tampering investigated by a correctional officer, had medical staff evaluate prisoners who complained of symptoms, and had ESP staff switch food between food carts to deter the tampering of inmates' food. (ECF No. 62-1.) In fact, Espinosa's own declaration shows that Gittere and medical came to his unit to investigate the "feces event" on the day it occurred. (ECF No. 74 at 5.)

Espinosa argues and provides sworn declarations stating that Defendants were informed that the cart switching technique was ineffective yet did not act. (ECF No. 74 at 13, 16, 21, 23.) Espinosa claims he knew the switching was not working because he was a porter and could see that the food trays were marked with cell numbers before being switched. (ECF No. 74 at 3-6.) However, this was not the only remedy Defendants employed. Defendants "investigated, instituted a program of random tray-swapping, tasted the food, supervised inmates, issued Operational Procedures for the Culinary, and responded to grievances." (ECF No. 82 at 4, ECF No. 62-1, ECF No. 62-6.) While one

proffered solution may have been defective, Defendants used multiple different tactics to prevent any poisoning of the food.

In sum, there is no dispute between the parties that Defendants took action to investigate and remedy the issues surrounding the alleged food. Espinona's own declaration and the declarations provided by other inmates confirm that an investigation was made, and steps were taken to remedy the situation. As such, there is no evidence to support the finding that Defendants *disregarded* the risks to Espinosa's health. Rather, the authenticated, admissible evidence provided shows that once Defendants knew of the alleged poisoning, they quickly took actions aimed at preventing future tampering with food. Therefore, because Defendants have met their burden on summary judgment and Espinosa has not established that a genuine issue of material fact actually exists, the Court recommends Defendants be granted summary judgment as to Claim 2.[8] *Matsushita,* 475 U.S. at 586.

### C.   Voluntary Dismissal of Claim 3

In his response to the motion for summary judgment, Espinosa "voluntarily dismiss[es] Defendants Carpenter, Stark, and Jones from [the] instant suit." (ECF No. 72 at 32.) Under Federal Rule of Civil Procedure 41(a)(2), the district court may grant plaintiff's motion for voluntary dismissal of the action without prejudice. *See Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996). "When ruling on a motion to dismiss without prejudice, the district court must determine whether the defendant will

---

[8]   Defendants argue they are entitled to qualified immunity on Claim 2 because "the law in the 9th Circuit has been that occasional foreign objects in food is not a constitutional violation." (ECF No. 62 at 8-9, ECF No. 82 at 3.) As a threshold matter, qualified immunity analysis starts with determining whether the official violated a constitutional right, and then whether the right was clearly established. *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citations omitted). However, even if the analysis proceeded to determining whether the right was clearly established, Defendants are not entitled to qualified immunity because one of the foreign objects is feces. "The minimal civilized measures of life's necessities require that no one ingest food that has been contaminated with feces. Intentionally distributing food known to have been contaminated with fecal matter qualifies as disregarding a substantial risk of serious harm to the inmates who received the food." *Bradford v. Sherman*, No. 117CV01601SKOPC, 2018 WL 1014554, at *3 (E.D. Cal. Feb. 22, 2018).

suffer some plain legal prejudice as a result of the dismissal." *Id.* Here, Defendants consent to the dismissal. (ECF No. 82 at 4.) Therefore, the Court recommends that Espinosa's request for voluntary dismissal of Claim 3 be granted.

## IV.  CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 62), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 62), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendants Carpenter, Stark, and Jones be **DISMISSED** from this action.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**:  September 18, 2023  .

_____
**UNITED STATES MAGISTRATE JUDGE**