UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BENJAMIN ESPINOSA,<br><br>                              Plaintiff,<br>    v.<br>WILLIAM GITTERE, *et al.*,<br><br>                            Defendants. | Case No. 3:21-cv-00205-ART-CSD<br><br>ORDER<br>(ECF No. 90) |

Plaintiff Benjamin Espinosa sued Defendants Nevada Department of Corrections Deputy Director Harold Wickham, Warden of Ely State Prison William Gittere, Associate Wardens of Ely State Prison William Ruebart and David Drummond, Ely State Prison Food Manager Jon Verde, and Ely State Prison Staff Sergeant Dennis Homan under 42 U.S.C. § 1983 for violations of his Eighth and First Amendment rights while incarcerated at Ely State Prison. Espinosa alleges that Defendants failed to prevent inmates from poisoning his food. Espinosa also alleges that Defendant Gittere placed him in the infirmary for thirteen days to retaliate for complaining about contaminated food.

Plaintiff moves the Court to reconsider its order (ECF Nos. 83, 87) granting Defendants' motion for summary judgment (ECF No. 62). Plaintiff argues that the Court erred in finding no genuine, material, disputed facts in elements of his deliberate indifference and retaliation claims. The Court grants Plaintiff's motion for reconsideration (ECF No. 90), vacates its prior order (ECF Nos. 83, 87) and denies Defendants' motion for summary judgment (ECF No. 62).

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Benjamin Espinosa was incarcerated at Ely State Prison between 2019 and 2021. (*See* ECF No. 23.) Espinosa was in protective custody because he was at risk of being targeted by gangs. Ely State Prison also housed inmates

1

classified as "Security Threat Group" (STG) because the prison believed they were in gangs. (*See id.*) Espinosa alleges that many STG inmates sought to harm protective custody inmates. (*See id.*)

Espinosa alleges that before and during his incarceration at Ely, Defendants Gittere, Reubart, Wickham, Drummond, Verde, and Homan allowed STG inmates to prepare meals for protective custody inmates. Further, he alleges that prison administrators failed to prevent STG inmates from poisoning the protective custody inmates' food with feces, odorless cleaning detergent, and other contaminants for at least two years. (*See id*; ECF No. 84 at 8.) Espinosa further alleges that he was retaliated against for filing grievances and kites about food contamination. (ECF No. 23.)

### A. Deliberate Indifference

Espinosa claims that protective custody inmates' food was poisoned with feces and undetectable cleaning detergent, and Defendants failed to take effective measures to stop it.

On September 18, 2019, several inmates discovered feces in their food. (ECF No. 74 at 13, 16, 21, 23.) As a result, inmates experienced health problems, including "bubble guts," vomiting, acid reflux, severe heartburn, and numbness of the tongue. (*Id.* at 10, 13, 16-17.) Inmates filed grievances complaining about the poisoned food, (*id.* at 21, 31, 36-38, 40, 42-44), and sent kites to Defendants and other staff. (ECF No. 75 at 10-23.)

Defendant Gittere and medical staff investigated the allegations of feces in the food on the day it occurred. (ECF No. 74 at 5, 13, 16.) They allegedly punished two inmates identified through review of surveillance footage who were believed responsible for the poisonings. (ECF No. 23; ECF No. 74 at 44.)

Espinosa alleges that after the feces poisoning, STG inmates switched to poisoning protective custody inmates' food with "white flash," an odorless powder detergent used in the culinary unit, and dirty water, kitchen implements, and

fingernails. (ECF No. 72.)

Defendants took corrective actions, but Espinosa claims that they knew these measures would fail. Defendants "investigated, instituted a program of random tray-swapping, tasted the food, supervised inmates, issued Operational Procedures for the Culinary, and responded to grievances." (ECF No. 82 at 4; ECF No. 62-1; ECF No. 62-6.) Inmates who worked as porters or formerly worked in the kitchen told Defendants that the tray-swapping was not working. (ECF No. 74 at 3-6, 10.) They told Defendants that the cart-switching, tray-swapping, sample tasting, and supervision were also not being carried out effectively. (ECF No. 74 at 5, 10.)

Defendants contest that Defendant Homan worked in the culinary unit. A declaration from Homan states that he was a disciplinary sergeant and has no knowledge of food service at Ely. (ECF No. 62-5.) Declarations by inmates identify Homan receiving and rejecting complaints about food contamination. (ECF No. 74 at 18, 21.) Defendants' production shows that Homan was involved in investigating alleged poisonings. (ECF No. 75 at 7.)

**B. Retaliation**

Espinosa alleges that Defendant Gittere retaliated against him for reporting continued contamination of his food. Two days after Espinosa complained to Gittere about finding a metal wire in his food, Gittere had Espinosa cell extracted and relocated to the infirmary in custody for thirteen days. (ECF No. 75 at 11; ECF No. 23 at 8.) While in the infirmary, Espinosa could not participate in programming. (*See* ECF No. 75.) Gittere responded to Espinosa's requests to return to his cell by writing, "[n]o, I'm concerned for your health." (ECF No. 75 at 14.) Gittere swore that he did not order Espinosa to be extracted from his cell and placed in the infirmary in custody, (ECF No. 62-1 at 3), but responses to Espinosa's kites bear a stamp showing that the kite was received by the Warden's office. (ECF No. 74 at 11, 14.)

3

### C. Procedural History

After discovery, Defendants moved for summary judgment on all claims. (ECF No. 62.) Magistrate Judge Baldwin issued a report and recommendation to grant summary judgment. (ECF No. 83.) The Court adopted Judge Baldwin's R&R over Espinosa's objections. (*See* ECF Nos. 84, 87.) Espinosa moved for reconsideration on his deliberate indifference and retaliation claims. (ECF No. 90.)

## II. LEGAL STANDARD

### A. Reconsideration

Any order that adjudicates fewer than all the claims of all the parties may be revised at any time before the entry of a judgment. Fed. R. Civ. P. 54. District courts possess the inherent power to reconsider an interlocutory order while the court retains jurisdiction. LR 59-1; *see Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014).

### B. Objections to Report and Recommendation

The Court conducts a *de novo* review of the objected-to findings and conclusions of a report and recommendation. 28 U.S.C. § 636(b)(1)(C); LR IB 3-2(b). The Court "may accept, reject or modify, in whole or in part, the magistrate judge's findings or recommendations." LR IB 3-2(b). A district judge may exercise discretion in reviewing findings and recommendations that were not objected to. *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003)

### C. Summary Judgment

Summary judgment is appropriate when the record shows "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*,

4


477 U.S. 242, 248-49 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the burden of informing the court of the basis for its motion and identifying parts of the record that show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. ANALYSIS

The Court reconsiders its prior ruling and finds that Defendant is not entitled to summary judgment on Plaintiff's deliberate indifference or retaliation claims.

### A. Deliberate Indifference

Under the Eighth Amendment's prohibition on cruel and unusual punishment, prison officials must "ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). To defeat a motion for summary judgment on an Eighth Amendment conditions claim, the inmate must provide sufficient facts to show that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To show deliberate indifference, the plaintiff must satisfy both an objective and subjective test. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The objective test requires showing that an excessive risk of harm to the inmate's safety existed. The subjective test requires showing that officials knew of the excessive risk and disregarded it. *Farmer*, 511 U.S. at 834.

The earlier order found that Espinosa had satisfied the objective test. (ECF No. 83 at 13–14; ECF No. 87.) Accordingly, the Court only considers the

subjective test and qualified immunity.

### 1. Subjective Test

The subjective test of a deliberate indifference claim requires the claimant to show that the officials knew that a risk of serious harm existed and disregarded that risk. *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015). The officials "need not have intended any harm to befall the inmate; it is enough that the official . . . failed to act despite [] knowledge of a substantial risk of serious harm." *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Farmer,* 511 U.S. at 837) (internal formatting omitted).

The earlier order found that because Defendants had attempted to address the poisonings, Espinosa could not show that Defendants disregarded a risk. (ECF Nos. 83, 87.) This holding did not view disputed facts and draw reasonable inferences in the non-moving party's favor. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (reversing grant of summary judgment on deliberate indifference claim for failing to view facts in light most favorable to non-moving party).

Summary judgment is not appropriate when questions of fact exist about whether prison administrators knew of food contamination and failed to resolve it for several months. *See Jackson v. Walker* No. CIV S-06-2023-WBS-GGH-P, 2009 WL 1743639, at *20, 24 (E.D. Cal. June 17, 2009) (denying summary judgment to culinary administrators who had been told by inmates that trays used to store food were contaminated with bird feces), *report and recommendation adopted,* No. CIV S-06-2023-WBS-GGH-P, 2009 WL 2579277 (E.D. Cal. Aug. 19, 2009). Defendants permitted STG inmates to cook for inmates in protective custody. (*See* ECF No. 72.) Many protective custody inmates grieved or otherwise told Defendants Verde, Homan, Wickham, Reubart, and Drummond that STG inmates were tampering with protective custody inmates' food months before and months after Espinosa had been transferred to Ely. (*See* ECF Nos. 72, 74). When

drawing all reasonable inferences and disputed facts in Espinosa's favor, a reasonable juror could find that Defendants knew that STG inmates may have been poisoning protective custody inmates.

On reconsideration, the Court addresses whether Defendants' use of multiple, ineffective corrective measures precludes their liability. (*See* ECF No. 87.) The earlier order acknowledged that a triable issue of fact existed as to whether Defendants knew that random tray-swapping was ineffective in preventing poisonings. (ECF No. 83; ECF No. 87.) Genuine issues of fact also existed about whether Defendants knew that their other protective measures were ineffective. Espinosa and other inmates testified that they had told Defendants that their other corrective measures did not work. Espinosa attests that the culinary unit received notice before Gittere and other administrators sampled the food (ECF Nos. 23, 72); that culinary staff browsed the Internet in their offices instead of supervising inmates (ECF No. 74); and that administrators did not investigate poisonings besides the feces poisoning in September 2019. (ECF Nos. 23, 74, 75.) Resolving these disputes about Defendants' knowledge requires credibility determinations by the factfinder that preclude summary judgment.

### 2. Homan's Participation in Culinary Unit

Additionally, Defendants argued that Defendant Homan was not involved with the culinary unit at Ely. (ECF No. 62.) Plaintiffs' inmate declarations personally identify Defendant Homan as a staff supervisor involved with the culinary unit, and other evidence shows that he was involved with investigating the feces-poisoning incident. (ECF Nos. 74, 75.) Defendant Homan's role, accordingly, is a question of fact that precludes summary judgment.

### 3. Qualified Immunity

Qualified immunity does not apply when "the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional

7

right" and when "that right was clearly established at the time of the violation." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 671 (9th Cir. 2021) (internal citations omitted). The previous order held that Espinosa had a clearly established right to food free from contamination by feces and detergent. (ECF No. 83 at 15 n.8; ECF No. 87.) This holding was not objected to, and the Court will not disturb it.

Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's deliberate indifference claim.

### B. Retaliation

When prison administrators retaliate against inmates for exercising their right to file grievances, they violate the First Amendment. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). For a retaliation claim to survive summary judgment, the plaintiff must show sufficient evidence that (1) a state actor took some adverse action against the inmate (2) because of (3) the inmate's protected conduct, and the action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Id.* at 567–68.

The earlier order held that Espinosa had provided sufficient facts for the first three elements of the standard. (*See* ECF No. 83 at 9; ECF No. 87.) The Court, therefore, only considers the fourth and fifth elements and qualified immunity.

#### 1. Chilling Effect of Retaliatory Conduct

The earlier order did not consider whether Espinosa showed that Defendants' retaliatory conduct chilled Espinosa's First Amendment activity. A constitutional retaliation claim must show conduct that "would chill or silence a person of ordinary firmness from future First Amendment activities" or allege "some other harm that is more than minimal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (quoting *Rhodes*, 408 F.3d at 568–69; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). The cell-extraction team threatened to mace

Espinosa if he did not comply with extraction. (*See* ECF No. 74.) While held in custody in the infirmary, Espinosa also lost recreation time and other privileges. (ECF Nos. 74, 75.) From these facts, a reasonable juror could infer that a thirteen-day custody placement in the infirmary had a chilling effect.

### 2. Legitimate Correctional Goal

In a prison retaliation claim, the plaintiff "bears the burden of proving the absence of a legitimate correctional goal for the adverse action." *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). When a plaintiff has shown that a retaliatory motive exists, defendants cannot win summary judgment by asserting that their conduct served a legitimate correctional goal, "even though [plaintiff] may have *arguably* ended up where he belonged." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003) (emphasis in original); *Johnson v. Ryan*, 55 F.4th 1167, 1202 (9th Cir. 2022) ("general justification for [retaliatory] action is not sufficient to [grant] summary judgment").

The Court's earlier order granted summary judgment because Defendants had put forward a legitimate correctional goal in cell-extracting Espinosa to the infirmary for thirteen days. (*See* ECF Nos. 83, 87.) Espinosa had complained of poisoned food, so Defendant Gittere placed him in the infirmary out of concern for Espinosa's health. (*See* ECF No. 87.)

This finding contravened Ninth Circuit precedent. *Johnson*, 55 F.4th at 1201. In *Johnson*, an inmate who was disassociating from a gang alleged that he had been removed from the facility's step-down program because he had filed lawsuits against the facility. Defendants argued that the district court correctly granted summary judgment on Johnson's retaliation claim because the facility had put forward a legitimate correctional goal of curtailing gang activity by removing Johnson, a former gang member, from the yard. *Id.* The Ninth Circuit reversed, finding that the facts Johnson provided to show defendants' retaliatory motive also created a genuine dispute of material fact about whether the

9

1 legitimate correctional goal put forward by the defendants was pretextual. *Id.* at
2 1202.

3 Like Johnson, Espinosa put forward facts that show a retaliatory motive.
4 Espinosa grieved and otherwise complained about his and other protective-
5 custody inmates' food being contaminated and the inadequacy of Defendants'
6 corrective measures. (*See* ECF No. 74; *supra.*) Like in *Johnson*, these facts, viewed
7 in the light most favorable to Espinosa, allow for an inference that Defendant
8 Gittere had an ulterior motive in cell-extracting Johnson to the infirmary for
9 nearly two weeks. 55 F.4th at 1202. Accordingly, the Court denies summary
10 judgment on the fifth element of Espinosa's retaliation claim.

### 3. Qualified Immunity

12 The earlier order did not consider whether Defendants were entitled to
13 qualified immunity on Espinosa's retaliation claim. (*See* ECF Nos. 83, 87.)
14 Qualified immunity does not apply when "the evidence viewed in the light most
15 favorable to the plaintiff is sufficient to show a violation of a constitutional right"
16 and when "that right was clearly established at the time of the violation."
17 *Sandoval*, 985 F.3d at 671.

18 First, Espinosa has provided sufficient facts to find a constitutional
19 violation. *See supra.* Second, an inmate's right to avoid retaliation for filing
20 grievances about prison conditions is clearly established. *See Shepard v. Quillen*,
21 840 F.3d 686, 688, 693 (9th Cir. 2016); *Rhodes*, 408 F.3d at 567; *Pratt*, 65 F.3d
22 at 806.

23 Accordingly, qualified immunity does not bar Espinosa's retaliation claim,
24 and the Court denies Defendants' motion for summary judgment on this claim.

25 **IV.   CONCLUSION**

26 It is ordered that Plaintiff's motion for reconsideration (ECF No. 90) of the
27 Court's order (ECF No. 87) on Defendants' motion for summary judgment (ECF
28 No. 62) is granted.

It is further ordered that Defendants' Motion for Summary Judgment (ECF No. 62) is denied as to Plaintiff's retaliation and deliberate indifference claims.

It is further ordered that Magistrate Judge Baldwin's Report and Recommendation (ECF No. 83) is adopted for all findings not contradicted by this order.

Plaintiff's retaliation claim continues against Defendant Gittere.

Plaintiff's deliberate indifference claim continues against Defendants Gittere, Reubart, Wickham, Drummond, Verde, and Homan.

DATED THIS 4th day of February 2025.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE